UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
(at Pikeville)

| | |
|---|---|
| GLENDA C., ) | |
| ) | |
| Plaintiff, ) | Civil Action No. 7:22-CV-110-CHB |
| ) | |
| v. ) | |
| ) | |
| KILOLO KIJAKAZI, *Commissioner of* ) | **MEMORANDUM OPINION** |
| *Social Security*, ) | **AND ORDER** |
| ) | |
| Defendant. ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

The Commissioner of Social Security denied Plaintiff Glenda C.'s application for Disability Insurance benefits. Plaintiff seeks judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g). [R. 1]. Both Plaintiff [R. 15] and the Commissioner [R. 16] have filed their respective briefs. For the reasons that follow, the Court finds that the Commissioner's decision is supported by substantial evidence in the record and complies with the applicable regulations. The Court will therefore affirm the Commissioner's decision.

**I.      Background**

Plaintiff is 57 years old and has a high school education. *See* [R. 9-1–9-12, Transcript of Administrative Record (hereinafter, "Administrative Transcript" or "Tr.") (attached to Commissioner's Answer as Exs. 1–12), at 34, 36, 406]. She is presently unemployed but has past relevant work experience as an account clerk and an administrative assistant. [Tr. 39, 407]. On October 22, 2019, Plaintiff protectively filed an application for Disability Insurance benefits ("DIB") under Titles II and XVIII of the Social Security Act, 42 U.S.C. § 1382c (the "Act"). [Tr. 377]. She alleged disability beginning on July 9, 2019, due to facet joint syndrome, fibromyalgia,

herniated and bulging discs, deteriorating spine, stage four liver disease, chronic lumbar pain with sciatica, thoracic spine pain, cervical disc herniations, osteoarthritis, diabetes, neuropathy, carpal tunnel syndrome, degenerative disc disease, and degenerative joint disease. [Tr. 377, 405].

Plaintiff's application was denied initially and upon reconsideration. [Tr. 304–25]. At Plaintiff's request, [Tr. 327], a hearing was held June 15, 2021, before Administrative Law Judge Robert Bowling ("ALJ Bowling"). [Tr. 30–54]. ALJ Bowling issued an unfavorable decision on June 25, 2021. [Tr. 13–29].

In making his determination, ALJ Bowling applied the traditional five-step sequential analysis promulgated by the Commissioner for evaluating a disability claim, 20 C.F.R. § 404.1520, *Kyle v. Comm'r of Soc. Sec.*, 609 F.3d 847, 855 (6th Cir. 2010), and found as follows. First, ALJ Bowling found Plaintiff has not engaged in substantial gainful activity since July 9, 2019, her alleged onset date. [Tr. 18]. Second, he found Plaintiff has the following severe impairments: disorders of the back, disco genic and degenerative; chronic liver disease and cirrhosis; osteoarthrosis and allied disorders; and fibromyalgia. *Id.* Third, ALJ Bowling found that none of Plaintiff's impairments or combination of impairments meet or medically equal the severity of a listed impairment under 20 C.F.R. Pt. 404, Subpt. P, App'x 1. [Tr. 19]. ALJ Bowling then determined Plaintiff has the residual functional capacity ("RFC") to perform "sedentary work" as defined in 20 C.F.R. 404.1567(a), with the following limitations:

> [She] could occasionally lift or carry 10 pounds; can frequently lift or carry less than 10 pounds; could sit for 6 hours in an 8-hour workday, but for no more than 1 hour at a time; could stand or walk for 2 hours in an 8-hour workday, but for no more than 30 minutes at a time; would need the ability to sit or stand at will; could never climb ladders, ropes and scaffolds; could occasionally climb ramps and stairs; could occasionally stoop, kneel, crouch and crawl; could occasionally balance as defined in the *Selected Characteristics of Occupations* in the Dictionary of Occupational Titles; [and] should avoid even moderate exposure to hazards such as the use of moving machinery and to unprotected heights.

[Tr. 19–20]. Fourth, ALJ Bowling found Plaintiff capable of performing her past relevant work as a secretary (as generally performed), as it would not require the performance of activities precluded by her RFC. [Tr. 23]. Consequently, ALJ Bowling concluded that Plaintiff has not been under a disability, as defined in the Social Security Act, from July 9, 2019, through the date of his decision. *Id.*

Plaintiff sought administrative review of ALJ Bowling's decision, and the Appeals Council declined review on September 13, 2022. [Tr. 1]. At that point, ALJ Bowling's decision became the final decision of the Commissioner, and Plaintiff sought judicial review from this Court. [R. 1].

## II. Standard of Review

"When reviewing the Administrative Law Judge's decision to deny disability benefits, the Court may 'not try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility.'" *McNabb v. Colvin*, No. 3:16CV-00298-DW, 2017 WL 489421, at *2 (W.D. Ky. Feb. 6, 2017) (citing *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)). Instead, the Court's review of the administrative law judge's decision is limited to an inquiry as to whether the administrative law judge's findings were supported by substantial evidence, 42 U.S.C. § 405(g); *Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001) (internal citations omitted), and whether the administrative law judge employed the proper legal standards in reaching her conclusion. *See Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 213 (6th Cir. 1986); *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 374 (6th Cir. 2013). Substantial evidence exists "when a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the other way." *Cotton v. Sullivan*, 2 F.3d 692, 695 (6th Cir. 1993); *see also Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir.

2007) (same). The Supreme Court has clarified that "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high[.]" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations omitted).

### III. Analysis

Plaintiff argues ALJ Bowling's decision "is not based upon the substantial and uncontroverted medical and testimonial evidence," but is, rather, "based upon the ALJ's arbitrary and capricious decision to improperly discount the severity of those impairments and instead substitute his impression of the Plaintiff's disability over medical judgments in the record." [R. 15, p. 7]. More specifically, Plaintiff suggests ALJ Bowling erred in failing to give "substantial weight" to Plaintiff's treating physician, Dr. Van Breeding, and that ALJ Bowling improperly relied on vocational expert testimony instead. *Id.* at 8. In response, the Commissioner contends ALJ Bowling properly considered the medical opinion evidence and administrative medical findings in making his disability determination. [R. 16, p. 3]. The Commissioner therefore submits that the agency's final decision should be affirmed. *Id.* at 9.

As stated, first, Plaintiff generally asserts that ALJ Bowling's assessment of the medical record—and, consequently, his RFC determination—is not supported by substantial evidence. [R. 15, p. 7]. The Court disagrees, however, and finds ALJ Bowling thoroughly discussed all relevant medical findings and appropriately concluded that "[t]he objective medical evidence [] supports the conclusion that the claimant is not disabled." [Tr. 21].

In his discussion of the record evidence, ALJ Bowling acknowledged Plaintiff's "complaints of lower back pain that radiated across the claimant's lower back and to her hips and thighs," for which she was treated between January 2019 and February 2021 with a bilateral lumbar medial branch neurotomy, bilateral T4, T5, T6, T7 and T8 thoracic medial branch blocks, bilateral

4

S1, S2 and S3 nerve blocks, and pain medication. *Id.* As ALJ Bowling noted, imaging of Plaintiff's thoracic spine in November of 2019 showed only "mild degenerative disc changes of the mid and lower thoracic discs without spinal stenosis or foraminal stenosis and no focal lesions of the thoracic spinal cord." *Id.* Likewise, imaging of Plaintiff's cervical spine at that time "showed a tiny central disc protrusion at C5-6 level without compromise of neural foramina and no focal lesions of the cervical spinal cord." *Id.* In fact, ALJ Bowling observed that, by February 2021, Plaintiff "reported 90-100% ongoing relief for one week following the right S1, S2 and S3 nerve blocks" and "after a left S1, S2, S3 radiofrequency ablation, [she] reported significant ongoing relief." *Id.* Moreover, as of April 2021, Plaintiff's "bilateral sacroiliac joint tenderness had improved, although she continued to exhibit pain with the rotation of the trunk, extension and flexion," which he accounted for by providing "appropriate limitations within the residual functional capacity." [Tr. 22].

Consequently, ALJ Bowling's RFC limited Plaintiff to sedentary work, which would require only occasional lifting or carrying ten pounds or less, sitting for only six hours in an eight-hour workday, and for no more than one hour at a time with the ability to sit or stand at will, and standing or walking for two hours in an eight-hour workday, but for no more than thirty minutes at a time. [Tr. 19]. Plaintiff argues the medical findings with respect to her back "imply that the Plaintiff is no longer able to perform her past work, as she cannot maintain any one position 'for an extended period of time.'" [R. 15, p. 4]. Setting aside the fact that she makes no attempt to elaborate on what constitutes an "extended period of time," Plaintiff fails to explain how ALJ Bowling's RFC—which acknowledges that she can only stand for thirty minutes at a time and sit for one hour—is inconsistent with the medical findings with respect to her back. Likewise, Plaintiff fails to offer any support for her argument that her inability to maintain one position for an

"extended period" is work-preclusive. On the other hand, ALJ Bowling's RFC, which allows only for sedentary work with additional restrictions, appropriately accounts for Plaintiff's limitations due to back pain and is consistent with the medical evidence related to her back.

Continuing with his evaluation of the record evidence, ALJ Bowling also discussed Plaintiff's liver, noting, "a biopsy from May of 2019 revealed findings consistent with liver cirrhosis" and, around the same time, "claimant was complaining of some lower abdomen pain and a lot of fatigue." [Tr. 22]. And while "[l]ab work consistently revealed elevated liver function," ALJ Bowling observed that, "on many examinations, the claimant denied abdominal pain, chills, fever, jaundice, nausea, pruritus and vomiting and did not exhibit abdominal distention," and when Plaintiff was evaluated in April 2021 for a liver transplant, "the evaluation was deferred as the claimant had a low MELD score (model for end stage liver disease)." *Id.* ALJ Bowling, consequently, found that the evidence did not indicate that Plaintiff's chronic liver disease and cirrhosis—although designated as severe—reached the level of a disabling impairment. And while Plaintiff offers that "her non-alcoholic cirrhosis of the liver is accompanied with esophageal varices that greatly restricts the type of medicine that she can take," and that "sitting aggravates her [symptoms] the most," [R. 15, p. 2], she offers no real argument as to how ALJ Bowling's RFC, which explicitly states that Plaintiff must be able to sit or stand at will, fails to adequately account for this impairment.

In addition to discussing the medical evidence of record, ALJ Bowling considered Plaintiff's daily activities in forming the RFC. ALJ Bowling acknowledged that "[d]espite her allegations, the claimant indicated that she is still capable of preparing simple meals, cleaning, light shopping and attending church," activities which "undermine the claimant's allegations because if her impairments were as severe as alleged, she would not likely be capable of engaging

6

in such." [Tr. 20, 21]. As ALJ Bowling observed, "these activities and observations support the conclusion that the claimant is capable of performing more work-related activities than she alleged." [Tr. 21].

Based on this evaluation, and upon independent review of the record as a whole, the Court finds that substantial evidence supports ALJ Bowling's assessment of the medical evidence generally. Although, as Plaintiff notes, she testified at the administrative hearing "that her musculoskeletal issues (including but not limited to lumbar, thoracic, and cervical pain along with hips and legs), liver disease, and complications thereof render her unable to work," [R. 15, p. 2], a claimant's statement that she is experiencing pain or other symptoms will not, taken alone, establish that she is disabled. *See* 20 C.F.R. § 404.1529(a); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 530 (6th Cir. 1997); *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986). There must be medical signs and laboratory findings which show the existence of a medical impairment that could reasonably be expected to produce the pain alleged. *Walters*, 127 F.3d at 530; *Duncan*, 801 F.2d at 854. In evaluating the claimant's subjective complaints, the ALJ considers objective medical evidence, as well as other non-exhaustive factors such as evidence of daily activities, the frequency and intensity of pain, medication taken and any resulting side effects, and any other measures taken to alleviate the pain. *See* 20 C.F.R. §§ 404.1529(c)(2), (3), 416.929(c)(2), (c)(3).

ALJ Bowling complied with the regulations by considering the record as a whole, and not just Plaintiff's subjective complaints or carefully selected medical findings, in fashioning Plaintiff's RFC. ALJ Bowling discussed the objective medical evidence, Plaintiff's treatment history, and Plaintiff's own hearing testimony. After carefully considering the entire record in this case, ALJ Bowling reasonably concluded that Plaintiff's "medically determinable impairments

7

could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." [Tr. 20].

Next, in addition to arguing generally that ALJ Bowling erred in his assessment of her medical evidence, Plaintiff also challenges ALJ Bowling's specific consideration of the findings of her treating physician, Dr. Van Breeding. [R. 15, p. 8]. Plaintiff's treatment records with Dr. Breeding indicate she consistently presented with "complaint of pain," [Tr. 1398, 1407, 1414], and was treated with a medication regimen, *see generally* [Tr. 1398–1424].[1] As of her telehealth visit on November 23, 2020, her diabetes was "stable," she was "compliant with using medication," and was managing it with "diet, oral medications and fingerstick blood sugars." [Tr. 1437]. Dr. Breeding's records list Plaintiff's "Pertinent negatives" at that time as "blurred vision, burning of extremities, chest pain, constant hunger, dental disease, diarrhea, dysesthesias, dyspnea, foot ulcers, frequent infections, urinary frequency, heartburn, hypoglycemic episodes, increased fatigue, nocturia, polydipsia, slow healing wounds / sores, weight gain and weight loss." *Id.* Dr. Breeding refilled Plaintiff's existing prescriptions during that visit and recommended no additional treatment. [Tr. 1441].

At a subsequent visit on December 14, 2020, Dr. Breeding's notes indicate Plaintiff "had question about beta blocker and we discuss [sic] in detail about stopping Coreg because of side effects." [Tr. 1450]. No physical examination occurred during this visit, as it was also a telehealth

---

[1] The Court observes that it appears all, or most all, of Plaintiff's treatment with Dr. Breeding was via telehealth appointments over the phone, and he conducted few (if any) physical, in-person examinations. *See, e.g.*, [Tr. 1402] (noting an inability to obtain all of Plaintiff's vital signs because she was seen "via telehealth, telephone call only no internet service"); [Tr. 1442] (noting an inability to obtain all of Plaintiff's vital signs, as she "consented to be seen via telehealth, telephone call only, couldnt [sic] connect to Zoom"); [Tr. 1411] (same).

8

visit via telephone. [Tr. 1454]. Two days later, Plaintiff presented with nausea and a fever and underwent a stress test, which was negative. [Tr. 1456]. Again, Plaintiff was seen via telehealth and instructed to visit an emergency room if her symptoms persisted. [Tr. 1461]. On January 2, 2021, Dr. Breeding's records indicate Plaintiff presented for "intermittent[]" and "fluctuating" joint pain. [Tr. 1465]. Dr. Breeding noted the pain was "burning," "aggravated by movement," and "relieved by rest." *Id.* He further noted that "this is not a new issue, she is following up with neuro on Wednesday." *Id.*

In addition to treatment records, Dr. Breeding also provided a two-page evaluation appearing to overview Plaintiff's general symptoms, conditions, and treatment history. [Tr. 1473–74]. In this evaluation, Dr. Breeding opined that Plaintiff "is unable to sit for more than one hour, stand for more than 30 minutes, she would require a 15-minute rest period every one hour of work" and she "is unable to bend, stoop, kneel, crawl, crouch, work at unprotected heights, be exposed to COVID due to the severity of her condition." [Tr. 1474]. He further offered that Plaintiff is unable "to climb or work at a deck [sic] job due to the severity of her increasing pain and the mental clouding that she is affected by from the pain medication." *Id.* According to Dr. Breeding, "[e]ven a sedentary job would be too extreme for [Plaintiff] due to the severity of her liver disease and her lumbar and cervical issues." *Id.*

The new regulations for evaluating medical opinions are applicable to Plaintiff's case since her application for benefits was filed after March 27, 2017. *See* 20 C.F.R. § 404.1520c (2017). Under the new regulations, the agency "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's own] medical sources." 20 C.F.R. § 404.1520c(a). An administrative law judge must consider "supportability, consistency, relationship [with the

claimant], specialization, and other factors" when determining the persuasiveness of an opinion. 20 C.F.R. 404.1520c(c)(1)–(5). But the administrative law judge need only explain how he considered the supportability and consistency factors, which are the two most important in determining the persuasiveness of a medical source's opinion or a prior administrative medical finding. 20 C.F.R. § 404.1520c(b)(2). The more relevant the objective medical evidence and supporting explanations presented, the more persuasive the medical opinion(s) will be. 20 C.F.R. § 404.1520c(c)(1). The more consistent the medical opinion(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive it will be. 20 C.F.R. § 404.1520c(c)(2).

Before discussing Dr. Breeding's opinions, ALJ Bowling comprehensively discussed the objective medical findings that evinced only "mild" abnormalities, "tiny central disc protrusion," and Plaintiff's own reports of "significant ongoing relief" with treatment. [Tr. 21]. ALJ Bowling then discussed the opinions of various other medical providers and found persuasive those which tailored objective medical findings to their proposed limitations. For example, ALJ Bowling found the opinion of Dr. Robert Klickovich persuasive, because it provided that Plaintiff "would need to change positions as needed and should avoid lifting more than 20 pounds" based on "the evidence relating to the claimant's spine, including the diagnostic imaging as well as the objective findings consisting of spinal tenderness and decreased range of motion." [Tr. 22]. ALJ Bowling also deemed findings by the state agency consultants assigned to Plaintiff's case "somewhat persuasive," because they "limit the claimant to sedentary exertional work activity [and] are consistent with and supported by the evidence of record, including the diagnostic imaging of the claimant's spine." *Id.* With respect to those findings, ALJ Bowling noted, however, that "the evidence additionally supports a sit/stand option, as the claimant exhibited a positive straight leg

test during multiple examinations" and "exhibited difficulty with lifting, carrying, kneeling, repetitive squatting and walking, with compensation patterns for sitting and standing and constant weight shifting and changing of positions with most of the items in the test," *id.*, which explained ALJ Bowling's decision to deem the findings only "somewhat persuasive."

Then, after considering Dr. Breeding's findings and opinions, ALJ Bowling provided the following:

> The undersigned finds the opinion of Dr. Breeding, unpersuasive. (Ex 26F, 30F). This opinion is not consistent with or supported by the evidence of record. Specifically, it is an overestimate of the claimant's limitations and is not fully consistent with Dr. Breeding's own treatment records on physical examination and review of systems, as these records denote negative findings for muscle weakness and joint swelling, as well as noting a normal visual overview of all four extremities. (Ex 23F, 26F). Moreover, Dr. Breeding's opinion also addressed the conclusion of disability, which is an issue reserved exclusively for the Commissioner.

[Tr. 23]. On independent review, the Court agrees with ALJ Bowling's conclusion. Despite generally controlled treatment for pain management, Dr. Breeding opines, with only vague support, that Plaintiff has highly restrictive, work-preclusive limitations. *See* [Tr. 1374]. As ALJ Bowling correctly found, these proposed limitations are not consistent with Dr. Breeding's own documented medical findings and the objective findings by other medical sources in the record. And although ALJ Bowling did not re-state all the findings by those other medical sources, it was not necessary for him to do so since it is clear he considered them previously in his analysis. *See Forrest v. Comm'r of Soc. Sec.*, 591 F. App'x 359, 366 (6th Cir. 2014) (recognizing that when sufficient factual findings are made elsewhere, an ALJ need not "spell out every fact a second time"). It is also worth noting that, notwithstanding ALJ Bowling's determination that Dr. Breeding's findings were unpersuasive, ALJ Bowling's RFC determination is still in many ways consistent with Dr. Breeding's opinion, for example, that she could not sit for more than an hour

11

or stand for more than thirty minutes. *Compare* [Tr. 19] *with* [Tr. 1474].

Plaintiff argues ALJ Bowling should have given Dr. Breeding's findings "great weight," but her citations to Sixth Circuit case law from the 1980s, *see* [Tr. 15, pp. 7–8], indicates either a lack of understanding of or willful disregard for the regulations applicable to claims for disability benefits filed on or after March 27, 2017, which changed the way the Commissioner considers medical opinion evidence. *See* 20 C.F.R. § 404.1520c (2017). The "old regulations," which do not apply to Plaintiff's claims, established a hierarchy of acceptable medical source opinions. *Hollon v. Comm'r of Soc. Sec.*, 142 F. Supp. 3d 577, 582 (S.D. Ohio 2015). Treating physicians topped the hierarchy. *Id.* The so-called "treating physician rule" required a treating physician's opinion be given controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record. 20 C.F.R. § 404. 1527(c)(2). Now, however, as previously stated, an ALJ need only discuss the supportability and consistency of medical opinions, including those of treating physicians. 20 C.F.R. § 404.1520c(b)(2); *see also Adams v. Comm'r of Soc. Sec.*, No. 23-3284, 2023 WL 6366106, at *2 (6th Cir. Sept. 28, 2023) (explaining the "new regulation substantially reduces the ALJ's obligation to explain the basis for his or her assessment of medical opinions"). Plaintiff's attempted reliance on the "treating physician rule" is, therefore, misplaced. ALJ Bowling complied with the new regulations by discussing both the supportability and consistency of Dr. Breeding's findings before deeming it unpersuasive.

In addition, as mentioned, Dr. Breeding offered a two-page assessment of Plaintiff's conditions and their limiting effects. [Tr. 1473–74]. The assessment, however, also opines on Plaintiff's ability to work. *See* [Tr. 1473] ("Most recently she has been unable to complete work or return back to work due to the severity of her medical conditions and is in the process of applying

for disability retirement. The patient has been followed here for the last 5-year period and has been seen for a number of increasingly worsening health issues which has led to her inability to work. She has been off work for greater than 6 months now due to the severity of her neck and back pain along with her underlying liver condition."); [Tr. 1474] ("[T]he severity of condition has rendered her unable to return back to any type of work or gainful employment. . . . We have found that she is able to modulate pain to the point that she can live through the day but she is unable to do any type of gainful employment due to the severity of her conditions."). Of course, as ALJ Bowling correctly recognized, "the conclusion of disability . . . is an issue reserved exclusively for the Commissioner." [Tr. 23]; *see also Allen v. Comm'r of Soc. Sec.*, 561 F.3d 646, 652 (6th Cir. 2009) ("Social Security regulations state that '[o]pinions on some issues . . . are not medical opinions . . . but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case; i.e., that would direct the determination or decision of disability."); 20 C.F.R. § 404.1527(d) (emphasis added):

> Medical source opinions on issues reserved to the Commissioner. Opinions on some issues, such as the examples that follow, are not medical opinions, as described in paragraph (a)(1) of this section, but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case; i.e., that would direct the determination or decision of disability.
>
> > (1) Opinions that you are disabled. We are responsible for making the determination or decision about whether you meet the statutory definition of disability. In so doing, we review all of the medical findings and other evidence that support a medical source's statement that you are disabled. *A statement by a medical source that you are* "disabled" *or* "unable to work" *does not mean that we will determine that you are disabled*.

ALJ Bowling, therefore, appropriately rejected Dr. Breeding's findings to the extent they opined on the ultimate issue of disability.[2]

---

[2] The Court observes that ALJ Bowling also appropriately rejected the opinion of Dr. James Owen to the extent that opinion also "arrived at a conclusion, dispositive of the ultimate issue of disability, which is an issue reserved

13

Having considered this analysis and the whole of the record evidence, the Court finds no error with ALJ Bowling's assessment of Dr. Breeding's findings or any of the medical evidence of record. ALJ Bowling complied with the regulations by discussing both the supportability and consistency of the assessment, and he thoroughly considered the objective medical evidence that contradicts many of Dr. Breeding's findings, which he expressly referenced in his opinion.

Lastly, Plaintiff cursorily offers that, "[b]efore the ALJ can rely on the testimony provided by a vocational expert, she must ensure that her hypothetical fairly reflects the restrictions and the evidence in the record, and the substantial evidence must support the assumptions in the hypothetical," and posits, "[i]t seems that the crux of this issue is that the vocational expert provided that the Plaintiff's skills are generally transferable, but a secretary in a specific position at a school board learned industry-specific skills that did not provide for transferability. As such, the Plaintiff should meet GRID rule 201.06." [R. 15, pp. 8, 9]. This argument, which is largely undeveloped, frustrates the Court's attempt at meaningful review. Indeed, "issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." *United States v. Layne*, 192 F.3d 556, 566 (6th Cir. 1999) (citing *McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997)); *see also Brindley v. McCullen*, 61 F.3d 507, 509 (6th Cir. 1995) (observing that "[w]e consider issues not fully developed and argued to be waived").[3] Even

---

exclusively for the Commissioner." [Tr. 22].

[3] Similarly, at the conclusion of her brief, Plaintiff offers the following singe-sentence assertion: "Pursuant to the medical records mentioned supra and contained in the transcript, the Plaintiff meets Listings 1.15; 1.18; 5.05(a)." [R. 15, p. 9]. Again, Plaintiff has waived this argument by failing to develop it in any meaningful way. *See Layne*, 192 F.3d at 566; *Brindley*, 61 F.3d at 509. The Court will briefly observe, however, that a claimant must meet a substantial burden to demonstrate a listed impairment at step three of the sequential evaluation. Listed impairments are considered by the Social Security Administration to be "severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." *Reynolds v. Comm's of Soc. Sec.*, 424 Fed. Appx. 411, 414 (6th Cir. 2011). Because a claimant who meets the requirements of a listed impairment at step three will be deemed conclusively disabled and entitled to benefits, the burden on the claimant is high. *See Robinson v. Comm'r of Soc. Sec.*, 426 F. Supp. 3d 411, 421 (E.D. Mich. 2019). As stated, Plaintiff has failed to put forth any argument or evidence indicating she has met that high burden.

so, Plaintiff's argument also fails on the merits.

The Sixth Circuit has made clear "that the SSA may not rely on the grids alone to meet its step-five burden where the evidence shows that a claimant has nonexertional impairments that preclude the performance of a full range of work at a given level." *Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 424 (6th Cir. 2008) (citing *Abbott v. Sullivan*, 905 F.2d at 926–27; *Damron v. Sec'y of Health and Human Servs.*, 778 F.2d 279, 282 (6th Cir.1985)). In such cases, in accordance with Social Security Ruling 83-14, an ALJ should employ "the assistance of a vocational resource." 1983 SSR LEXIS 33, at *9–10 (1983). Here, because Plaintiff's RFC would preclude her from performing a full range of sedentary work, *see* [Tr. 19], ALJ Bowling could not have relied on the GRID rules alone and properly employed an impartial vocational expert to determine Plaintiff's additional limitations.

And, to the extent Plaintiff argues ALJ Bowling failed to "ensure that [his] hypothetical fairly reflect[ed] the restrictions and the evidence in the record, and the substantial evidence [] support[ed] the assumptions in the hypothetical," [R. 15, pp. 8–9], this argument also fails. At the administrative hearing, ALJ Bowling asked the vocational expert to consider an individual of Plaintiff's age, education, and work experience and opine on their ability to perform sedentary work. [Tr. 48]. ALJ Bowling then offered additional exertional limitations (the same as those listed in his ultimate RFC determination) and asked the vocational expert whether the hypothetical individual could perform Plaintiff's past relevant work. *Id.* The vocational testified that such an individual could do so as generally performed. *Id.* Because this Court has already determined that ALJ Bowling's RFC finding, which served as the basis for the hypothetical given to the vocational expert, was supported by substantial evidence in the record, the Court finds no error with respect to the hypothetical or ALJ Bowling's reliance on the vocational expert's testimony.

15

Based on the foregoing, the Court finds that Plaintiff has presented no availing arguments in this appeal, and it perceives no error in ALJ Bowling disability determination. And, as a closing note, an ALJ's decision may be supported by substantial evidence "even if that evidence could support a decision the other way." *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993). While there might be evidence in the record that could support a contrary conclusion, it is clear ALJ Bowling thoroughly considered all evidence of record, and the Court finds no error in his decision.

### IV. Order

For the above-stated reasons, the Court finds the Commissioner's decision is supported by substantial evidence in the record and complies with the applicable regulations. **IT IS THEREFORE ORDERED** that the final decision of the Commissioner is **AFFIRMED.**

This the 6th day of November, 2023.

CLARIA HORN BOOM,
UNITED STATES DISTRICT COURT JUDGE
EASTERN AND WESTERN DISTRICTS OF
KENTUCKY

Copies:     Counsel of Record